UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO.  1:14cr22-1

    Plaintiff,

  -vs-                                                              Judge Michael R. Barrett

JEFFREY EDMERSON,

    Defendant

## ORDER

This matter came on for hearing on April 9, 2015 on Defendants Dominic Andrews and Lester Kidd's Joint Motion to Dismiss Indictment Based on Outrageous Government Conduct (Doc. 43) and the Government's response thereto (Doc. 45); and Defendant Lester Kidd's Motion for Discovery on the Issue of Racial Profiling/Selective Prosecution In Order to Present Such a Defense (Doc. 53) and the Government's response thereto (Doc. 54).  On April 9, 2015, the Court entertained evidence and arguments of counsel on the aforesaid.

At the hearing, Joe Ruchti, Cincinnati Police Department assigned to Alcohol, Tobacco and Firearms ("ATF") Task Force, indicated that this operation began with a paid/consideration-receiving informant.  This informant was under investigation and potentially facing charges.  He was well known within local drug circles as a dealer and distributor who may, perhaps, still be plying his trade.  The informant was approached by originating Defendant, Jeffrey Edmerson, who inquired as to whether the informant knew particulars on any drug dealers he could take down in a robbery.  Edmerson made several contacts with the informant who then relayed the information to his "handler."

Edmerson was well known to law enforcement with prior drugs and a weapon charge. Law enforcement decided to follow ATF's "home invasion scenario" in order to test the Defendant's willingness to participate in violent crime. This scenario calls for discussions between undercover law enforcement agents and Edmerson, who discussed the particulars of a drug dealer robbery. The scenario calls for and permits ample opportunities for the Defendants to withdraw from the plan. The plan contemplates Edmerson's use of associates due to the number of "robbery victims" and the manner and location of the scenario.

While the scenario calls for drugs and drug dealers, it is entirely fictitious with agents playing the intended role of drug dealers and no real controlled substances are involved. In this case the discussion centered on 12 kilos of cocaine worth approximately $500,000.00. It is noted that this operation was not infiltrating an existing organization but, rather, discussing an *ad hoc* robbery. Edmerson, who is Andrews and Kidd's co-defendant, voluntarily participated and accepted the plan. Edmerson confirmed to agents that robbery was what he did, in other words, his propensity for this type of criminal activity. Edmerson recruited three others to join this scenario to assist him, including Andrews and Kidd. Defendant Kidd had apparently purchased zip-ties with which to restrain the "victims" and Defendant Andrews was armed, according to police.

While testimony may differ as to the accounts surrounding the actual "take down" and the possibility of an entrapment defense, the Court focuses on the instant motion requesting pretrial dismissal. In a case where law enforcement officers applied an otherwise difficult to find ingredient to enable a drug manufacturer's scheme to proceed,

the Supreme Court found that neither the fact of deceit nor the fact that government officers/employees afforded opportunities or facilities for commission of offenses defeated the prosecution. *United States v. Russell*, 411 U.S. 423, 435 (1973) (citing *Sorrells v. United States*, 287 U.S. 435, 441 (1932); *Sherman v. United States*, 356 U.S. 369, 372 (1958)). It is only when the government's deception actually implants criminal design in the mind of a defendant that the defense of entrapment comes into play. *Russell*, 411 U.S. at 436. In *United States v. Barger*, 931 F.2d 359 (6th Cir. 1991), an undercover agent infiltrated a motorcycle gang and suggested a plan for retaliating against a rival gang. Despite the suggestion, the defendant in that case expressed pleasure at the plan and adopted it as his own and the prosecution was upheld. *Id.*

The Defendants asked the Court to review a strikingly similar case, *United States v. Hudson*, 3 F. Supp.3d 772 (C.D. Ca. 2014). The trial court found in a reverse sting operation where the defendants had no previous disposition to the type of scenario proposed that the government engaged in improper conduct. The agents made exuberant promises of the fabricated booty and enticed the defendants to join. That district court expressed deep misgivings where, in its mind, the government manufactured the entire crime and subsequently encouraged the defendant's participation.

Against this background, the Court analyzes the facts before it as presented in the memorandum and in the way of testimony. The four factors to consider in determining whether government conduct was outrageous include:

(1) the need for the police conduct as shown by the type of criminal activity involved;

> (2) the impetus for the scheme or whether the criminal enterprise preexisted the police involvement;
>
> (3) the control the government exerted over the criminal enterprise; and,
>
> (4) the impact of the police activity on the commission of the crime.

*Barger*, 931 F.2d at 363.

As to the first prong, this Court finds that Co-Defendant Edmerson had a predisposition toward the type of violent activity the scheme entailed. Had the drug dealer he approached not been an informant, violent consequences likely would have resulted. In order to determine whether evidence was, as a matter of law, insufficient to establish predisposition, the evidence must be construed in a light most favorable to the prosecution. *Barger*, 931 F.2d at 366 (citing *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984)). The governmental activity did not so offend concepts of fundamental fairness as to justify the extraordinary employment of judicial power to curb such conduct. *United States v. Leja*, 563 F.2d 244, 246 (6th Cir. 1977).

As to the second prong, while no enterprise previously existed, Edmerson initially provided the impetus for the scheme in contact with the informant and was confident that he knew the type of associates that were likely to engage in the plan. The third and fourth prongs are neutral.

Therefore, the Court does not believe that the government's conduct was outrageous so as to warrant pretrial dismissal. The burden of establishing an outrageous conduct rests with the defendant. *United States v. Borrero*, No. 13-cr-58, 2014 WL 5493241 (S.D.N.Y. Oct. 30, 2014). Further, *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994) suggests that the issue is one to be raised as an entrapment

defense, which generally is a question for the jury. *Tucker*, 28 F.3d at 1428.  For an entrapment defense to be successful as a matter of law, the undisputed evidence must demonstrate a patently clear absence of predisposition.  *United States v. Harris*, 9 F.3d 493, 498 (6th Cir. 1993).  Here, it does not.  Accordingly, the Joint Motion to Dismiss Indictment Based on Outrageous Government Conduct (Doc. 43) is DENIED.

The Court also addresses the discovery of racial profiling/lack of prosecution in order to present a defense (Doc. 53) and the Government's response thereto (Doc. 54).  Not only did the evidence at the hearing show the government did not directly seek out Edmerson and had no involvement in the decision to solicit Andrew and Kidd, but defense counsel also elicited testimony from the agent that he either has or is involved in three similar sting scenarios, one of which involved white targets.  This does not rise to the level of racial profiling in this matter and, as such, the Court DENIES the defense's request for additional discovery from the Government (Doc. 53).

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT